# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MINGO COUNTY BOARD OF EDUCATION,**
**Employer Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-60**          (JCN: 2023021351)

**MICHAEL LUCAS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mingo County Board of Education ("MCBOE") appeals the February 4, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Michael Lucas filed a response.[1] MCBOE did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Lucas no permanent partial disability ("PPD") award, and instead granting him a 13% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lucas filed an Employees' and Physicians' Report of Occupational Injury or Disease dated May 19, 2023, Mr. Lucas filed a workers' compensation claim for a work-related injury that occurred when Mr. Lucas injured his head, shoulder, back, leg, and hip when he fell backward on concrete on May 16, 2023.[2] The physician's section of the claim application was completed by a medical provider at Tug Valley ARH on May 19, 2023.

---

[1] MCBOE is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Lucas is represented by William B. Gerwig III, Esq.

[2] Prior to the compensable injury, medical records indicate that Mr. Lucas has been seen and treated for back pain in the lumbar region since 2016. Mr. Lucas was diagnosed with lumbar radiculopathy and noted to have lumbar degenerative disc disease and spondylosis in the lumbar region for which he received steroid injections. Mr. Lucas complained of some cervical pain to Dr. Laura Ashby-Jones in 2019, but clinical findings were negative. According to the record, a CT scan of the cervical spine was obtained on May 10, 2022, which revealed cervical degenerative disc disease. A thoracic CT scan taken on the same day was negative.

The provider indicated that Mr. Lucas had sustained occupational injuries to his head, hip, back, shoulder, and leg. On June 20, 2023, the claim administrator issued an order holding the claim compensable for a contusion of the thorax, a contusion of the scalp, and a sprain of the cervical spine.

By Diagnosis Update dated August 7, 2023, Keith Hall, M.D., requested that right shoulder pain and right shoulder rotator cuff tear be added as compensable diagnoses in the claim. Dr. Hall noted that Mr. Lucas had a history of right rotator cuff repair on February 21, 2023, that he sustained a new work-related injury to his right shoulder on May 16, 2023, and a right shoulder MRI was ordered to evaluate for new right rotator cuff pathology.

David Soulsby, M.D., performed an independent medical evaluation ("IME") of Mr. Lucas on October 18, 2023. Mr. Lucas reported that on May 16, 2023, he was walking a service dog on a leash when he tripped on the leash and fell, striking his head, neck, midback and lower back. At the time of the evaluation, Mr. Lucas complained of constant midline pain throughout his neck with radiation to both upper extremities, throbbing in the thoracic spine, pain in the lower lumbar region to the lower extremities, right shoulder pain, and numbness in his great toe bilaterally. Mr. Lucas reported a prior injury to his low back three years prior. Dr. Soulsby found Mr. Lucas' cervical and thoracic injuries to be at maximum medical improvement ("MMI"). Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*") and West Virginia Code of State Rules § 85-20 ("Rule 20"), Dr. Soulsby found Mr. Lucas to have 0% impairment for both the cervical and thoracic spine related to the compensable injury. Dr. Soulsby opined that there was a lack of evidence of a specific injury involving the cervical and thoracic regions. The claim administrator issued an order dated October 30, 2023, granting Mr. Lucas no PPD award based upon Dr. Soulsby's report of October 18, 2023. Mr. Lucas protested this order.

A right shoulder MRI performed on December 16, 2023, revealed a recurrent full-thickness tear of the supraspinatus with medial retraction, a nondisplaced degenerative tearing of the labrum, subacromial/subdeltoid bursitis, and a complete tear of the biceps tendon with distal retraction.

On December 20, 2023, Mr. Lucas was evaluated by Bruce Guberman, M.D. Mr. Lucas denied any cervical or thoracic symptoms prior to the compensable injury of May 16, 2023, other than anterior neck pain that was evaluated in May of 2022 and the symptoms resolved. Dr. Guberman found that Mr. Lucas was at MMI. Using the *Guides* and Rule 20, Dr. Guberman found Mr. Lucas to have a total of 8% whole person impairment ("WPI") related to the cervical spine. Dr. Guberman opined that 1% should be apportioned due to the evidence of preexisting degenerative joint disease, for a total of 7% WPI related to the compensable injury. For the thoracic spine, Dr. Guberman found 6%

WPI related to the compensable injury, and he opined that apportionment was not necessary because there was no evidence of severe degenerative changes. Dr. Guberman found Mr. Lucas to have a combined total of 13% WPI for his compensable cervical and thoracic injuries.

Mr. Lucas was seen by Dr. Hall on December 27, 2023, for follow-up of his right shoulder. Mr. Lucas complained of pain, decreased mobility, weakness, and popping in his right shoulder. Mr. Lucas reported that he had previously undergone right rotator cuff repair before reinjuring his right shoulder. Dr. Hall assessed Mr. Lucas with a traumatic complete tear of the right rotator cuff, and he recommended right shoulder arthroscopy and rotator cuff repair. On January 16, 2024, the claim administrator authorized Dr. Hall's request for right shoulder arthroscopy.

On June 25, 2024, Dr. Soulsby performed a second IME of Mr. Lucas and found that he had a lot of weakness in the right shoulder girdle. Dr. Soulsby opined that it was unlikely that Mr. Lucas would ever recover strength equal to the opposite extremity; however, his right shoulder could still improve. Accordingly, Dr. Soulsby opined that Mr. Lucas had not reached MMI in regard to his right shoulder. Regarding the claimant's cervical and thoracic injuries, Dr. Soulsby stated, "Nothing was found during today's examination which changes my opinion concerning the classification or impairment rating." In an IME addendum report from Dr. Soulsby dated August 31, 2024, he reiterated his opinion that Mr. Lucas did not suffer a compensable spinal injury and noted that he classified Mr. Lucas' cervical and thoracic spine under Category I of Tables 85-2-D and E in Rule 20.

Mr. Lucas was evaluated by Austin Nabet, D.O., on October 4, 2024. Dr. Nabet found Mr. Lucas to be at MMI. Using the *Guides* and Rule 20, Dr. Nabet placed Mr. Lucas in Cervical Category II of Table 85-20-E and found him to have a total of 5% WPI related to the cervical spine and then apportioned the entirety of Mr. Lucas's 5% impairment to preexisting cervical spondylosis. Dr. Nabet did not explain his reasoning for apportionment. For the thoracic spine, Dr. Nabet placed Mr. Lucas in Thoracic Category I of Table 85-20-D and found that Mr. Lucas had 0% impairment related to the compensable injury.

On February 4, 2025, the Board reversed the claim administrator's order granting Mr. Lucas no PPD award and granted him a 13% PPD award. The Board found that Dr. Guberman's IME was the most persuasive report of record. MCBOE now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

3

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

MCBOE argues that there is no objective medical documentation that Mr. Lucas suffered a significant injury to his thoracic spine. Further, MCBOE argues that the Board mischaracterized Dr. Soulsby's findings in order to discredit his impairment rating. Finally, MCBOE argues that the Board clearly drew every possible inference in Mr. Lucas' favor and issued a decision that is contrary to a preponderance of the evidence and "harkens back to the 'rule of liberality' era of workers' compensation jurisprudence." We disagree.

In *Duff*, the SCAWV held that:

Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant 'has a definitely ascertainable impairment resulting from' a preexisting condition(s). This requires that the employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

*Duff* at syl. pt. 6.

Here, the Board determined that Mr. Lucas established that he was entitled to a 13% PPD award. The Board found that the report of Dr. Soulsby was not reliable as he stated that there was a lack of evidence of injury in the thoracic and cervical spine, when injuries to both had been held compensable. Moreover, the medical records predating the compensable injury show few complaints of cervical or thoracic symptoms, and there is no

evidence of continuous cervical or thoracic symptoms immediately prior to the compensable injury. According to Dr. Soulsby's evaluations, after the compensable injury, Mr. Lucas complained of cervical and thoracic symptoms to his treating physicians, and his own report documents current cervical and thoracic symptoms. As a result, Dr. Soulsby's conclusion that Mr. Lucas showed no evidence of cervical and thoracic impairment from the compensable injury is contrary to the evidence of record. Finally, the copy of Dr. Soulsby's evaluation provided to this Court does not contain an approved Low Back Examination form which is required for all spine impairment evaluations.[3]

The Board also found that pursuant to *Duff*, Dr. Nabet's report is unreliable as he failed to offer any rationale to explain his decision to apportion the entirety of the cervical impairment to a preexisting condition. The only remaining IME was Dr. Guberman's report, and the Board found that he properly evaluated Mr. Lucas under the *Guides* and Rule 20 and, further, that he adequately explained his reasoning for apportionment.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Lucas established that he is entitled to a 13% PPD award. Further, we conclude that the Board was not clearly wrong in finding that Dr. Guberman's report was the only reliable IME of record.

We find no merit in MCBOE's arguments regarding the Board's analysis and findings related to the physician reports and medical evidence. MCBOE has established that it strongly disagrees with the Board's decision; however, it failed to establish that the Board was clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order granting Mr. Lucas no award and granted him a 13% PPD award.

---

[3] [An impairment] report must state the factual findings of all tests, evaluations, and examinations that were conducted and must state the manner in which they were conducted so as to clearly indicate their performance in keeping with the requirements of the Guides. For any evaluation and examination of a compensable back injury, the back examination form previously adopted by the Workers' Compensation Commission must be completed and submitted with the narrative report. A copy of the current edition of the back examination form can be obtained from the Commission, Insurance Commissioner, private carrier or self-insured employer, whichever is applicable. *A report and opinion submitted regarding the degree of permanent whole body medical impairment as a result of a back injury without a completed back examination form shall be disregarded.* W. Va. Code R. 85-20-66.2 (2006) (emphasis added).

Accordingly, we affirm the Board's February 4, 2025, order.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White